**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**JOHN BARRETT**                                                                  **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 2:06cv271-KS-MTP**

**CHRISTOPHER B. EPPS, et al.**                                 **DEFENDANTS**

### REPORT AND RECOMMENDATION

THIS MATTER is before the court on the Motion for Summary Judgment [66] filed by Defendants Wexford Health Services and Dr. Rochel Thornton Walker,[1] and *sua sponte* for evaluation of Plaintiff's claims against Nurse Yvonne Barton pursuant to 28 U.S.C. § 1915(e)(2).[2] Having considered the submissions of the parties and the applicable law, the undersigned recommends that the Motion [66] be GRANTED and that the claims against Wexford Health Services, Dr. Rochel Thornton Walker, and Nurse Yvonne Barton be dismissed with prejudice.

### FACTUAL BACKGROUND

Plaintiff John Barrett is currently incarcerated in South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi, serving a life sentence for homicide. Plaintiff filed his Complaint [1] on December 19, 2006, pursuant to 42 U.S.C. § 1983. Since then, Plaintiff has amended his complaint at least seven times,[3] and has clarified and amended his

---

[1] Dr. Rochel Thornton Walker is identified in the Complaint as "Unknown Walker."

[2] While Yvonne Barton, proceeding *pro se*, is not a moving Defendant, this court addresses the claims against her because Plaintiff alleges that Wexford is responsible for her actions. The court also takes this opportunity to evaluate Plaintiff's claims against Ms. Barton pursuant to 28 U.S.C. § 1915(e)(2), as Plaintiff is proceeding *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915.

[3] *See* pleadings: [8] [14] [16] [18] [19] [25] [51].

pleadings through his sworn testimony during his *Spears*[4] hearing on June 27, 2007. In his voluminous pleadings, Plaintiff alleges claims for the denial and/or delay of adequate medical treatment, retaliation, and the denial of an adequate diet against the following Defendants: the Mississippi Department of Corrections ("MDOC"), SMCI, Christopher Epps, Ronald King, Medical Providers, Wexford Health Sources, Inc. ("Wexford"), Nurse Yvonne Barton, Unknown Walker, Margaret Bingham, Dr. Mark Saterials, Mario Martin, and LaDarrell Perry.[5]

Plaintiff alleges that he was attacked by some "gangsters" on or about September 19, 2006, and injured his leg. (Tr. 9.) Plaintiff claims "they x-rayed it a few days later and said there was no damage to it." (Tr. 10.) Although his leg was injured on September 19, 2006, Plaintiff states that it "waited until December 6[, 2006,] to finally break," when he bent down to get something out of his locker. (Tr. 9.) Between September 19, 2006 and December 6, 2006, Plaintiff claims he saw a doctor or healthcare provider three or four times for his leg. (Tr. 10.)

Plaintiff claims that after he broke his leg on December 6, he was carried to the clinic, his leg was x-rayed, and the doctor told him his patella was broken. (Tr. 11.) He was provided a wheelchair and his medical class was dropped to five, and he was told that he would be sent for an outside referral in a few days. (Tr. 12.) He claims that he did not see an outside doctor within a few days. *Id.* Plaintiff alleges that he kept going to the clinic for his leg, and they gave him ibuprofen and pain shots, but that his leg would not heal. *Id.*

---

[4]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The transcript from Plaintiff's *Spears* hearing is cited herein as "(Tr. __)."

[5]The MDOC, SMCI, and Medical Providers were dismissed by Order [29] dated April 17, 2007; Margaret Bingham was dismissed by Order [48] dated July 20, 2007; and Dr. Mark Saterials was dismissed by Order [124] dated May 12, 2008.

On January 24, 2007, Plaintiff was transferred from SMCI to Central Mississippi Correctional Facility ("CMCF") in Pearl, Mississippi. *See* Change of Address [11]. Plaintiff claims that he was only transferred to CMCF to receive medical treatment for his leg because of the Motion for Preliminary Injunction [10] he filed a few days earlier. (Tr. 12.) Dr. Steven Weisfeld of the Central Mississippi Orthopedics Clinic examined Plaintiff on January 25, 2007, and recommended that surgery be performed on his right knee within two to three weeks. *See* Ex. E to Motion [66-2] at 10-11. Plaintiff claims he further injured his right leg on January 29, 2007, when he slipped in the shower. (Tr. 15.) Dr. Weisfeld performed surgery on Plaintiff's right knee on February 13, 2007. *See* Ex. F to Motion [66-2] at 12-14; (Tr. 13).

Plaintiff was seen by Dr. Weisfeld on March 28, 2007, for a six-week post-op appointment. *See* Ex. G to Motion [66-2] at 15. Dr. Weisfeld noted that Plaintiff had no complaints except that his cast was rubbing on his staples. Dr. Weisfeld further noted that the wound had healed, the cast cylinder was in good shape, and that there was no evidence of infection. Dr. Weisfeld noted that he would remove the staples and the cast in six weeks. *Id.*

Subsequently, Plaintiff claims that he got scabies (itch mites) on his leg because his cast got wet. (Tr. 13.) He alleges that the medical staff at CMCF would not treat him for scabies, would not take his cast off, and that Dr. Walker would "just look at it and say it was okay." *Id*. Plaintiff claims that the itching got so bad, he cut his own cast off on or about April 19, 2007. *Id.*

The record reflects that Plaintiff submitted a sick call request regarding the scabies on May 2, 2007. *See* Ex. H to Motion [66-2] at 16. Plaintiff was seen by S. James, RN, and his chart was referred to a provider. *Id.* On May 4, 2007, Plaintiff saw Dr. Webb, who prescribed one bottle of Permethrin, and ordered that Plaintiff be given a change of clothes and bed linens

3

after treatment. *See* Ex. I to Motion [66-2] at 17. On May 14, 2007, Plaintiff refused further treatment for his scabies, stating that "there is no infection now - at all." *See* Ex. K to Motion [66-2] at 19.

On May 10, 2007, Plaintiff saw Dr. Weisfeld for his six-week follow-up appointment. *See* Ex. J to Motion [66-2] at 18. Plaintiff told Dr. Weisfeld that he was "getting around good," and Dr. Weisfeld noted that Plaintiff's wound had healed, was "non-tender," and that his knee was "doing well." *Id.*

Plaintiff was transferred back to SMCI on or about November 30, 2007. *See* Change of Address [70].

As set forth in his pleadings, and as amended by the sworn testimony given during his *Spears* hearing,[6] Plaintiff's allegations against the moving Defendants, Dr. Walker and Wexford, are that these Defendants were deliberately indifferent to his serious medical needs, and denied him an adequate diet. Specifically, Plaintiff claims that Dr. Walker, Medical Director at CMCF, ignored him at the clinic, denied his request for a lay-in food tray,[7] and denied his request for crutches or a wheel-chair, despite the fact that his hernias were evident. (Tr. 20.) Plaintiff alleges that although Dr. Walker did order him a lay-in food tray for one week on February 28, 2007, she would not continue the lay-in tray order after that. He claims he went without food for about four days because he could not walk the 120 yards to the dining hall due to his leg injury

---

[6]*See Hurns v. Parker*, 165 F.2d 24, No. 98-60006, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).

[7]Plaintiff testified that a lay-in food tray is when the prison officials bring the food tray to the prisoner in his cell. (Tr. 15-16.)

and hernias. *See* Exhibit [72-2] at 6; (Tr. 16-17). He claims that all he ate during those four days was noodles provided by other inmates. He states that he lost weight due to the denial of the lay-in food tray. (Tr. 15-16.) According to Plaintiff, Sergeant Hollins subsequently reinstated his lay-in food tray. (Tr. 16.)

Plaintiff also claims that Dr. Walker would not give him any pain medication when he "re-injured" his leg on or about January 29, 2007, and that Dr. Walker "controls the whole thing." (Tr. 19-20.)

Plaintiff alleges that Wexford is responsible for the actions of Dr. Walker and Yvonne Barton, since "they employ these people." (Tr. 21-22.) Plaintiff claims that Yvonne Barton, a nurse at CMCF, failed to make his appointment for a follow-up visit with the doctor for his right knee in February 2007. (Tr. 21.)

On November 15, 2007, Defendants Dr. Walker and Wexford filed their Motion for Summary Judgment [66]. On or about December 10, 2007, Plaintiff filed his Response [72] in opposition to the Motion.[8]

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, the moving Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the moving Defendants fail to discharge the burden of showing

---

[8]On November 30, 2007, Plaintiff filed a Motion for Continuance [71], requesting the court to continue its ruling on Defendants' Motion for Summary Judgment [66] until he had the documents he needed to properly respond to the motion. The court denied Plaintiff's Motion [71] by Order [89] dated March 1, 2008.

the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues."  *Id.* at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts.  "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts.  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

Additionally, because Plaintiff is proceeding *in forma pauperis* in this action, his complaint is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2), which mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious."  *See also Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990) (recognizing the court's authority "to test the proceeding" and deeming appropriate *sua sponte* evaluation of the merit of the asserted claim).  "A complaint is frivolous if it lacks an arguable basis in law or in fact." *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995).  This court is "vested with especially broad discretion in making the determination of whether an IFP proceeding is frivolous."  *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in

7

order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

With this legal framework in mind, the court will address Plaintiff's claims against Defendants Wexford Health Services, Dr. Rochel Thornton Walker, and Nurse Yvonne Barton.

Denial/Delay of Adequate Medical Care

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain."  *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference "is an extremely high standard to meet."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 838.

"[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Prisoners are not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Plaintiff's allegations against Dr. Walker and Nurse Barton involve acts that allegedly occurred after he was transferred from SMCI to CMCF in late January of 2007. Accordingly, the crux of Plaintiff's complaint– that there was an unreasonable delay from when he broke his leg on December 6, 2006 until his surgery on February 13, 2007– does not involve Dr. Walker or Nurse Barton. Neither Dr. Walker nor Nurse Barton had any involvement with the treatment of Plaintiff's leg at SMCI, or in scheduling his surgery with Dr. Weisfeld.

Plaintiff's claim that Dr. Walker denied him pain medication after he "re-injured" his leg on January 29, 2007, fails to demonstrate deliberate indifference to a serious medical need. Plaintiff claims that on the night he re-injured his leg, a nurse called Dr. Walker at home, but she would not prescribe him any pain medication. (Tr. 19.) He states that the nurse called another doctor, and he ordered a pain shot for him. *Id.* Accordingly, Plaintiff ultimately received a pain shot that night, and suffered no serious harm.

Plaintiff's allegation that Dr. Walker denied his request for crutches or a wheel chair for his hernias also fails as a matter of law. Plaintiff testified that he was provided a wheel-chair from January 29, 2007 until his surgery on February 13, 2007. (Tr. 15.) He also testified that he

9

was not provided any crutches, but later provided conflicting testimony that his hernias tore *when he used his crutches* because he had to lift his arms.  (Tr. 15).  He further testified that he "wasn't able to go [to the dining hall] *on those crutches* that far because of my hernias."  (Tr. 16) (emphasis added).

Plaintiff states that Dr. Walker denied his request for a wheel-chair or crutches despite the fact that his hernias were evident.  He testified that he "tried to tell them [about his hernias], but they don't want to give me nothing for it."  (Tr. 16.)  Plaintiff testified that he was provided a belt to relieve his hernia pain.  (Tr. 20.)  Plaintiff's disagreement with Dr. Walker's alleged denial of crutches or a wheel-chair for his hernias does not amount to deliberate indifference to a serious medical need.[9]  *See Norton*, 122 F.3d at 292.

Plaintiff's allegation that Dr. Walker ignored him in the clinic on one day also fails to constitute deliberate indifference to a serious medical need.  Indeed, Plaintiff does not even allege what ailment brought him to the clinic that day; although, it appears that he came to the clinic to request a lay-in tray.  (Tr. 20.)  Such allegations fail to meet the extremely high standard of deliberate indifference.  *See Davidson*, 91 Fed. Appx. at 964.

Likewise, his claim that Dr. Walker and the CMCF staff failed to treat him for itching/scabies does not amount to an Eighth Amendment violation.  Plaintiff testified that  Dr. Walker would "just look at it and say it was okay."  (Tr. 13.)   Plaintiff's allegations fail to establish that Dr. Walker knew of and disregarded an excessive risk to Plaintiff's health.  *See Farmer*, 511 U.S. at 838.  Moreover, Plaintiff was ultimately treated for the itching/scabies.  The

---

[9]It is also noteworthy that after Plaintiff's surgery on February 13, 2007, Dr. Weisfeld stated that Plaintiff "is going to be touch down weightbearing for a length[y] period of time."  *See* Ex. F to Motion [66-2].

record reflects that Plaintiff submitted a sick call request for itching/scabies on May 2, 2007, was treated by Dr. Webb on May 4, 2007, and reported that the infection had cleared up on May 14, 2007.  *See* Exs. H, I, and K to Motion [66-2].  Accordingly, Plaintiff suffered no serious harm.

Plaintiff claims that Yvonne Barton, a nurse at CMCF, failed to make his appointment for a follow-up visit with the doctor for his right knee in February 2007.[10]  He claims that Nurse Barton should have made him an appointment with Dr. Weisfeld, an outside consultant, because his cast was wet and itchy.  (Tr. 21.)  In her Answer, Nurse Barton states that "Appointments are scheduled according to urgency and at the discretion of the treating physician and pending approval [from the] MDOC Chief Medical Officer."  Answer [60].  Therefore, it appears that Nurse Barton did not have authority to set an appointment with an outside physician for Plaintiff's complaint that his cast was wet and itchy.  Nevertheless, the record indicates that Plaintiff did indeed see Dr. Weisfeld for his six-week post-op appointment on March 28, 2007.  *See* Ex. G to Motion [66-2] at 15.  On March 28, 2007, Dr. Weisfeld noted that the cylinder cast was in good repair and there was no evidence of infection.  *Id.*  Accordingly, Plaintiff's allegations against Nurse Barton fail to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2); *Ali,* 892 F.2d at 440.

Finally, Plaintiff's allegations against Wexford do not amount to a constitutional violation.  Plaintiff merely alleges that Wexford should be liable for the actions of Dr. Walker and Nurse Barton because "they employ these people."  (Tr. 21-22.)  In his Response [72] to Defendants' Motion for Summary Judgment [66], Plaintiff argues that Wexford should be liable because it makes the policies for medical treatment for the MDOC facilities, and makes the final

---

[10]*See supra*, footnote 2.

decisions on the treatment provided to inmates. *See* Response [72] at 6. He claims that Wexford should be responsible because its doctors failed to properly care for his knee when it was first injured in September of 2006, and Wexford failed to reprimand or fire the doctors responsible. *Id*. at 6-7.

As stated above, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver,* 276 F.3d at 742 & n.6; *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505-06 (1982) (holding that plaintiff could not recover against private state-employed company under Section 1983 based on theory of respondeat superior). Further, Plaintiff has failed to demonstrate that Wexford affirmatively participated in any constitutional deprivation or implemented an unconstitutional policy. *See Mouille v. City of Live Oak, Tex*., 977 F.2d 924, 929 (5th Cir. 1992). The records reflect that Plaintiff injured his leg in September 2006, his leg was x-rayed a few days later, and "there was no damage to it." (Tr. 10.) When he broke his leg on December 6, 2006, he was carried to the clinic, his leg was x-rayed, and he was provided a wheel-chair. (Tr. 12.) He testified that he kept going to the clinic for his leg, and was given pain medication, although he leg would not heal.

The record reflects that Plaintiff saw Dr. Weisfeld on January 24, 2007, for a consultation on his right knee. *See* Ex. E to Motion [66-2] at 10-11. Dr. Weisfeld performed surgery on Plaintiff's leg on February 13, 2007, and saw Plaintiff for follow-up visits on March 28, 2007 and May 10, 2007. *See* Exs. E, G, and J to Motion [66-2] at 10-18. During his appointment with Dr. Weisfeld on May 10, 2007, Plaintiff told him that he was "getting around good," and Dr. Weisfeld noted that Plaintiff's wound had healed, was "non-tender," and that his knee was "doing well." *See* Ex. J to Motion [66-2] at 18.

Further, the record reflects that Plaintiff was treated for his complaint of scabies on May 4, 2007, and later reported that the infection had completely cleared up. *See* Exs. H, I, and K to Motion [66-2].

While Plaintiff may disagree with the medical treatment that was provided, this does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292; *see also McMahon*, 583 F.2d at 174 (holding that prisoners are not entitled to the "best" medical treatment available).

Denial of Adequate Diet

In order to establish an Eighth Amendment claim, "the prisoner must demonstrate, *inter alia*, an objective component of conditions so serious as to deprive him of the minimal measure of life's necessities, as when denied some basic human need." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). Pursuant to the Eighth Amendment, inmates must be provided with "well-balanced meal[s], containing sufficient nutritional value to preserve health." *Berry*, 192 F.3d at 507 (quoting *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)) (internal quotation marks omitted). The Constitution requires that inmates be provided with "reasonably adequate" food. *Berry*, 192 F.3d at 507 (quoting *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996)). However, "[t]he deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Berry*, 192 F.3d at 507 (quoting *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998)). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id*.

Plaintiff claims he went without food for about four days because he could not walk the 120 yards to the dining hall due to his leg injury and hernias. (Tr. 16-17.) He complains that Dr. Walker only ordered him a lay-in food tray for one week on February 28, 2007, and would not

continue the lay-in tray after that.  He claims that Dr. Walker denied his request because there "was no need for a lay-in tray." (Tr. 20.)  He claims that all he ate during those four days was noodles provided by other inmates.  He states that he lost weight due to the denial of the lay-in food tray.  (Tr. 15-16.)  According to Plaintiff, Sergeant Hollins subsequently reinstated his lay-in food tray.  (Tr. 16.)

Plaintiff's allegations against the moving Defendants do not constitute cruel and unusual punishment in violation of the Eighth Amendment.  Plaintiff does not allege that Defendants deprived him of any meals; rather he complains that his meals were not delivered to his cell.  Plaintiff claims that Dr. Walker did order him a lay-in tray for a week, but disagrees with her alleged decision not to continue the lay-in tray after that.  Plaintiff's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton*, 122 F.3d at 292; *see also Lumpkin v. Bearry*, No. 4:06cv88-M-B, 2006 WL 2850352, at *2 (N.D. Miss. Oct. 4, 2006) (holding that plaintiff's claim that defendant was deliberately indifferent to his serious medical needs by not restoring his lay-in tray privileges failed as a matter of law).

## RECOMMENDATION

For the reasons stated above, it is the recommendation of the undersigned that the Motion for Summary Judgment [66] filed by Defendants Wexford Health Services and Dr. Rochel Thornton Walker be GRANTED, and that the claims against Yvonne Barton be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the

recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    SO ORDERED this the 5th day of June, 2008.

                                          s/ Michael T. Parker
                                          United States Magistrate Judge