**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**JOHN BARRETT**                                                          **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 2:06cv271-KS-MTP**

**CHRISTOPHER B. EPPS, et al.**                                      **DEFENDANTS**

<u>**REPORT AND RECOMMENDATION**</u>

THIS MATTER is before the court on the Motion for Summary Judgment [95] filed by

Plaintiff as to Defendants Christopher Epps and Ronald King, and the Cross-Motion for

Summary Judgment [104] filed by Christopher Epps, Ronald King, Mario Martin, and LaDarrell

Perry.  Having considered the submissions of the parties and the applicable law, the undersigned

recommends that the Motions [95] [104] be DENIED.

FACTUAL BACKGROUND

Plaintiff John Barrett is currently incarcerated in the South Mississippi Correctional

Institution ("SMCI") in Leakesville, Mississippi, serving a life sentence for homicide.  Plaintiff

filed his Complaint [1] on December 19, 2006, pursuant to 42 U.S.C. § 1983.  Since then,

Plaintiff has amended his complaint at least seven times,[1] and has clarified and amended his

pleadings through his sworn testimony during his *Spears*[2] hearing on June 27, 2007.[3]  In his

voluminous pleadings, Plaintiff alleges claims for the denial and/or delay of adequate medical

---

[1]*See* pleadings: [8] [14] [16] [18] [19] [25] [51].

[2]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  The transcript from Plaintiff's *Spears* hearing is cited herein as "(Tr. ___)."  *See* Docket Entry dated 8/2/2007.

[3]*See Hurns v. Parker*, 165 F.2d 24, No. 98-60006, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).

treatment, the denial of an adequate diet, retaliation, and cruel and unusual punishment against

the following Defendants: the Mississippi Department of Corrections ("MDOC"), SMCI,

Christopher Epps, Ronald King, Medical Providers, Wexford Health Sources, Inc. ("Wexford"),

Nurse Yvonne Barton, Unknown Walker, Margaret Bingham, Dr. Mark Saterials, Mario Martin,

and LaDarrell Perry.[4]

Plaintiff alleges that he was attacked by some "gangsters" on or about September 19,

2006, and injured his leg.  (Tr. 9.)  Plaintiff testified that he spent the night in the hospital

because "they thought [he] had a blood vessel in [his] eye busted and [his] nose broke."  (Tr. 10.)

Plaintiff claims "they x-rayed [his leg] a few days later and said there was no damage to it."  *Id.*

Although his leg was injured on September 19, 2006, Plaintiff states that it "waited until

December 6, [2006,] to finally break," when he bent down to get something out of his locker.[5]

(Tr. 9.)  Between September 19, 2006 and December 6, 2006, Plaintiff claims he saw a doctor or

healthcare provider three or four times for his leg.  (Tr. 10.)

Plaintiff claims that after he broke his leg on December 6, he was carried to the clinic, his

leg was x-rayed, and the doctor told him his patella (kneecap) was broken.  (Tr. 11-12.)  He was

provided a wheelchair and his medical class was dropped to five, and he was told that he would

be sent for an outside referral in a few days.  (Tr. 12.)  He claims that he did not see an outside

---

[4]The MDOC, SMCI, and Medical Providers were dismissed by Order [29] dated April 17, 2007; Margaret Bingham was dismissed by Order [48] dated July 20, 2007; and Dr. Mark Saterials was dismissed by Order [124] dated May 12, 2008.  On June 5, 2008, the undersigned entered a Report and Recommendations [130], recommending that Wexford Health Services, Dr. Rochel Thornton Walker, and Nurse Yvonne Barton be dismissed from this action.

[5]In his Rebuttal [118] in Support of his Motion for Summary Judgment, Plaintiff claims that his leg was actually fractured during the attack in September of 2006, but he did not know it until his medical records were produced.

doctor within a few days. *Id.* Plaintiff alleges that he kept going to the clinic for his leg, and they gave him ibuprofen and pain shots, but that his leg would not heal. *Id.*

Plaintiff alleges that he asked Ronald King, Superintendent of SMCI, about his knee surgery when he saw him in the dining hall, and also wrote Mr. King a letter to "speed things up," pursuant to Mr. King's request. *Id.* He also stated that he had friends call Mr. King on his behalf inquiring about treatment for his knee. *Id.* Mr. King allegedly told Plaintiff's friend that he would receive treatment the next day, but he never did. *Id.*

On January 24, 2007, Plaintiff was transferred from SMCI to Central Mississippi Correctional Facility ("CMCF") in Pearl, Mississippi. *See* Change of Address [11]. Plaintiff claims he was put in a over-crowded van and that his belongings were "thrown" on his lap. *See* Amended Complaints [14] [25]. Plaintiff alleges that Mario Martin and LaDarrell Perry, the officers that transported him to CMCF, threw his wheelchair out of the van, and would not let him take the wheelchair with him, and that one of the officers slammed the door on his leg and told Plaintiff that "[he] like[d] to file too much paperwork." (Tr. 14.) Plaintiff testified that when he arrived at CMCF, the officers "put him on the ground" and he stayed there for about two hours. *Id.* Plaintiff claims that someone finally came out and put him in a wheelchair and brought him in the building. *Id.*

Plaintiff claims that he was only transferred to CMCF to receive medical treatment for his leg because of the Motion for Preliminary Injunction [10] he filed a few days earlier. (Tr. 12.) Yet, he also states that he was transferred to CMCF in retaliation for filing this lawsuit. (Tr. 14.)

Dr. Steven Weisfeld of the Central Mississippi Orthopedics Clinic examined Plaintiff on January 25, 2007, and recommended that surgery be performed on his right knee within two to

three weeks.  *See* Ex. E to Motion [104-6].  Plaintiff claims that he also saw another doctor that

day for his hernias.  *See* Amended Complaint [14] at 4.

Plaintiff claims that he "re-injured" his leg on January 29, 2007, when he slipped in the

shower "hopping around trying to take a bath."  *Id.*  He testified that he was carried to the clinic,

"they" called a doctor, and he was given pain shot and sent back to his cell in a wheelchair.  *Id.*

Plaintiff claims that he went without a wheelchair or crutches from January 24, 2007 - January

29, 2007.  (Tr. 15.)

Dr. Weisfeld performed surgery on Plaintiff's right knee on February 13, 2007.  *See* Ex. F

to Motion [104-7]; (Tr. 13).  Plaintiff was seen by Dr. Weisfeld on March 28, 2007, for a six-

week post-op appointment.  *See* Ex. G to Motion [104-8].  Dr. Weisfeld noted that Plaintiff had

no complaints except that his cast was rubbing on his staples.  Dr. Weisfeld further noted that the

wound had healed, the cast cylinder was in good shape, and that there was no evidence of

infection.  Dr. Weisfeld noted that he would remove the staples and the cast in six weeks.  *Id.*

Subsequently, Plaintiff claims that he got scabies (itch mites) on his leg because his cast

got wet.  (Tr. 13.)  He alleges that the medical staff at CMCF would not treat him for scabies,

would not take his cast off, and that Dr. Walker would "just look at it and say it was okay."  *Id.*

Plaintiff claims that the itching got so bad, he cut his own cast off on or about April 19, 2007. *Id.*

The record reflects that Plaintiff submitted a sick call request regarding the scabies on

May 2, 2007.  *See* Ex. H to Motion [104-9].  Plaintiff was seen by S. James, RN, and his chart

was referred to a provider.  *Id.* On May 4, 2007, Plaintiff saw Dr. Webb, who prescribed one

bottle of Permethrin, and ordered that Plaintiff be given a change of clothes and bed linens after

treatment.  *See* Ex. I to Motion [104-10].  On May 14, 2007, Plaintiff refused further treatment

for his scabies, stating that "there is no infection now - at all."  *See* Ex. K to Motion [104-12].

On May 10, 2007, Plaintiff saw Dr. Weisfeld for his six-week follow-up appointment.  *See* Ex. J to Motion [104-11].  Plaintiff told Dr. Weisfeld that he was "getting around good," and Dr. Weisfeld noted that Plaintiff's wound had healed, was "non-tender," and that his knee was "doing well."  *Id.*

Plaintiff was transferred back to SMCI on or about November 30, 2007.  *See* Change of Address [70].

As set forth in his pleadings, and as amended by the sworn testimony given during his *Spears* hearing, Plaintiff's allegations against the remaining Defendants, Christopher Epps, Ronald King, Mario Martin, and LaDarrell Perry, include the following: denial/delay of adequate medical treatment, retaliation, and cruel and unusual punishment.[6]  Specifically, Plaintiff alleges that Ron King knew of his medical condition (a broken patella) in December of 2006, yet failed to give him any medical treatment until February 13, 2007.  The only treatment he received during this time was Tylenol, despite Mr. King's representation that he would get Plaintiff a referral.  (Tr. 18-19.)  He claims that Christopher Epps also knew of his broken patella in December of 2006; he claims he had "people" call Mr. Epps on his behalf and he wrote him a letter.  (Tr. 23.)  However, he alleges that Mr. Epps never did anything to help him get treatment for his knee.

Plaintiff alleges that Officers Mario Martin and LaDarrell Perry retaliated against him for filing this lawsuit.  Specifically, he claims that on January 24, 2007, when he was transferred

_____

[6]As previously stated, the undersigned has recommended that Wexford Health Services, Dr. Rochel Thornton Walker, and Nurse Yvonne Barton be dismissed from this action.  *See* Report and Recommendations [130].

5

from SMCI to CMCF, the officers threw his wheelchair out of the van, and would not let him take the wheelchair with him, and that one of the officers slammed the door on his leg.  (Tr. 14.) He claims that this constitutes cruel and unusual punishment.

On March 19, 2008, Plaintiff filed his Motion for Summary Judgment [95] as to Defendants Christopher Epps and Ronald King.  On or about April 10, 2008, Defendants filed their Responses [103] [105] in opposition to Plaintiff's Motion [95].  On April 11, 2008, Defendants filed their Cross-Motion for Summary Judgment [104].  Plaintiff filed his Rebuttal [118] in support of his Motion [95] and his Response [119] in opposition to Defendants' Cross-Motion [104] on May 8, 2008.

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to non-movant, the moving party demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  If the moving party fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues."  *Id.* at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts.  "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, *497 U.S. 871,* 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or

6

the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts.  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983.  However, Section 1983  "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers."  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).  Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted).  "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."  *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted).  The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

With this legal framework in mind, the court will address Plaintiff's claims against the remaining Defendants, Christopher Epps, Ronald King, Mario Martin, and LaDarrell Perry.[7]

Denial/Delay of Adequate Medical Care

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

---

[7]*See supra*, footnote 4.

inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838.

"[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Prisoners are not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

In his Motion [95], Plaintiff claims he is entitled to judgment as a matter of law against Defendants Ron King and Christopher Epps, because they were deliberately indifferent to his serious medical needs. Specifically, he claims that they waited over two months (from December 6, 2006 to February 13, 2007) to get him the treatment he needed for his broken knee, despite their knowledge of his condition. *See* Motion [95] at 5. During these two months, Plaintiff alleges that the only treatment he received for his knee was pain medication and an x-ray. To support his assertion that these Defendants had knowledge of his broken knee, Plaintiff attaches the affidavit of Jefferson Long, a personal friend, and letters he sent to Mr. King and Mr. Epps. *See* Exs. A, B, and F to Motion [95-2].

Plaintiff also alleges that he was referred by a doctor for hernia surgery in August of

2006, and nothing has been done to date.  *See* Motion [95] at 8.  Plaintiff alleges that Mr. King

and Mr. Epps should have been notified of his condition pursuant to MDOC policy.

In their Response [103] in opposition to Plaintiff's Motion [95] and Cross-Motion for

Summary Judgment [104], Defendants deny that Plaintiff was not treated for his broken knee,

and state that he had a surgical repair of a patella fracture of his right knee.  Defendants submit

the affidavit of Dr. Ron Woodall, which states that Plaintiff had surgery on his right knee in

November 2007.  *See* Affidavit [103-3].  Dr. Woodall's statement regarding Plaintiff's knee

surgery is contrary to the medical records at issue, and Defendants' Memorandum [106], which

reflect that Plaintiff's surgery was performed on February 13, 2007.  *See* Ex. G to Motion [95-2]

at 12-14; Defendants' Memorandum [106] at 2.

Defendants state that "nothing exists to support [Plaintiff's] conclusory allegations that

the time it took to surgically repair his patella fracture was deliberate indifference."  *See*

Response [103] at 2.  Yet, Defendants offer no explanation as to why Plaintiff's surgery was

delayed for over two months.  Dr. Woodall's affidavit is also devoid of such information.

Further, Defendants do not mention Plaintiff's alleged hernias and whether he has received any

treatment for same.[8]

In addition, the affidavit submitted by Ron King does not mention the treatment Plaintiff

received for his broken knee, or any medical treatment for that matter.  *See* Ex. A to Response

[103-2].  Defendants did not submit an affidavit for Christopher Epps.

---

[8]The court notes that Defendants' Brief [106] in Support of their Cross-Motion for
Summary Judgment is in large part a replication of the Motion for Summary Judgment [66] [69]
filed by Wexford Health Sources and Dr. Walker, despite the fact that the claims against these
Defendants involve different claims and allegations.

Based on the record before the court, there are genuine issues of material fact as to whether Plaintiff's claims against Ron King and Christopher Epps for the denial and/or delay of adequate medical treatment for his broken knee and for his hernias constitute an Eighth Amendment violation.  Plaintiff's conclusory assertion that Mr. King and Mr. Epps knew or should have known of his health conditions and were deliberately indifferent in denying and/or delaying adequate medical treatment for same does not entitle him to a judgment as a matter of law on these claims.  *See Orthopedic & Sports Injury Clinic v. Wang Labs., Inc*., 922 F.2d 220, 225 (5th Cir. 1991) (citations and quotations omitted) (stating that "unsupported ... affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment").  Accordingly, Plaintiff's motion must be denied.

Likewise, Mr. Epps and Mr. King have failed to establish that there are no genuine issues of material fact as to whether they were deliberately indifferent in denying and/or delaying Plaintiff adequate medical treatment for his knee and hernias.  Thus, Defendants' motion must also be denied.

<u>Cruel and Unusual Punishment</u>

It is well-settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1970).  However, the Eighth Amendment's "prohibition of cruel and unusual punishments necessarily excludes from

11

constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *See Copeland v. Nunan*, 250 F.3d 743, No. 00-20063, 2001 WL 274738, at *2 (5th Cir. Feb. 21, 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1 (1992)) (internal quotations and citations omitted).

Plaintiff alleges that on January 24, 2007, when he was transferred from SMCI to CMCF, Officer Mario Martin and Officer LaDarrell Perry threw his wheelchair out of the van, and would not let him take the wheelchair with him, and that one of the officers slammed the door on his leg. (Tr. 14.)  He claims that this constitutes cruel and unusual punishment in violation of the Eighth Amendment.

The following excerpt is the only argument made by Officers Mario Martin and LaDarrell Perry in support of their Cross-Motion for Summary Judgment [106] on this claim: "Officer Mario Martin and Officer LaDarrell Perry transported Inmate John Barrett from SMCI to CMCF on or about January 24, 2007 and allegedly slammed a door on his broken leg and took his wheelchair, neither of which is a claim of constitutional magnitude." *See* Memorandum [106] at 4.  Defendants do not deny that they slammed the door on Plaintiff's leg, or that they took his wheelchair.  Defendants did not submit an affidavit from either officer, nor did they offer any explanation as to why they would have taken such actions.  Accordingly, genuine issues of material fact exist as to whether Plaintiff's claims against Mario Martin and LaDarrell Perry for cruel and unusual punishment rise to the level of an Eighth Amendment violation.  Thus, Defendants are not entitled to judgment as a matter of law on this issue.[9]

---

[9]Plaintiff's Motion for Summary Judgment [95] does not address this claim.

12

Retaliation

"To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).  To prevail on claim of retaliation, Plaintiff must establish "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his . . . exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).  To prove causation, Plaintiff must show that "but for the retaliatory motive the complained of incident . . . would not have occurred." *McDonald*, 132 F.3d at 231 (internal citations and quotations omitted).  Plaintiff must present either direct evidence of retaliatory motivation or "a chronology of events from which retaliatory motivation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal citations and quotations omitted).

Plaintiff alleges that he was transferred to CMCF in retaliation for filing this lawsuit.  (Tr. 14.)  He also claims that the actions allegedly taken by Mario Martin and LaDarrell Perry on January 24, 2007, were taken in retaliation against Plaintiff.  He claims that one of the officers slammed the door on his leg and told Plaintiff that "[he] like[d] to file too much paperwork."  *Id.*

This claim is not addressed by Plaintiff or Defendants in their motions for summary judgment.  Accordingly, genuine issues of material fact exist as to whether Defendants retaliated against Plaintiff and whether such retaliation rose to the level of a constitutional violation.

RECOMMENDATION

For the reasons stated above, it is the recommendation of the undersigned that the Motion for Summary Judgment [95] filed by Plaintiff as to Defendants Christopher Epps and Ronald

King be DENIED, and that Defendants' Cross-Motion for Summary Judgment [104] be DENIED.

NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED this the 19th day of June, 2008.

s/ Michael T. Parker
United States Magistrate Judge

14